FILED

2026 Feb-23  AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

## SOUTHERN DIVISION

**DR. JASMINE T. AGNEW,**

Plaintiff,

v.

**AMERICAN HEALTH INFORMATION MANAGEMENT ASSOCIATION (AHIMA),**

Defendant.

### COMPLAINT AND JURY DEMAND

### I. NATURE OF THE ACTION

1. Plaintiff Dr. Jasmine T. Agnew ("Plaintiff" or "Dr. Agnew") brings this employment discrimination action against Defendant American Health Information Management Association ("AHIMA" or "Defendant") for unlawful race discrimination, retaliation, a racially hostile work environment, and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff also asserts race-discrimination and retaliation claims under 42 U.S.C. § 1981.

2. As set forth below, AHIMA's executive leadership subjected Plaintiff—the only Black executive and only person of color in senior leadership—to racially stereotyped and disparaging remarks, differential restrictions on professional visibility (including external speaking), and adverse changes to her authority and responsibilities after she raised good-faith governance, compliance, and ethical concerns. The cumulative conduct was severe and/or pervasive, rendering working conditions so intolerable that Plaintiff was forced to resign, constituting constructive discharge.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title VII and 42 U.S.C. § 1981.

4. This Court has jurisdiction to grant the relief sought pursuant to 28 U.S.C. §§ 2201–2202 and 42 U.S.C. §§ 2000e-5(g), 1981a.

5. Venue is proper in this District under Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3), and/or 28 U.S.C. § 1391 because Plaintiff performed substantial job duties in this District while working remotely from Alabama; AHIMA knowingly directed Plaintiff's work, performance expectations, and employment-related communications to her while she was located in Alabama; and the effects of AHIMA's unlawful employment practices were experienced in this District.

6. AHIMA is headquartered in Chicago, Illinois; however, AHIMA's executive leadership operated remotely, and relevant employment, governance, and operational decisions were made through remote meetings and electronic communications and were directed to Plaintiff while she worked remotely from Alabama.

## III. PARTIES

7. Plaintiff Dr. Jasmine T. Agnew is an adult individual and, at all relevant times, was an employee of Defendant. Plaintiff is African American.

8. Defendant American Health Information Management Association (AHIMA) is an employer within the meaning of Title VII and engaged in an industry affecting commerce. AHIMA maintains a principal office at 201 West Lake Street, #226, Chicago, Illinois 60606.

## IV. ADMINISTRATIVE EXHAUSTION (TITLE VII)

9. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), assigned Charge No. 420-2025-04727.

10. The EEOC issued Plaintiff a Notice of Right to Sue dated November 26, 2025.

11. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## V. FACTUAL ALLEGATIONS

12. AHIMA hired Plaintiff effective July 1, 2024. Plaintiff served as Senior Vice President of Academic Affairs & Professional Credentials.

13. Plaintiff worked remotely throughout her employment while residing in Alabama. AHIMA's leadership knowingly assigned, evaluated, and directed Plaintiff's executive work to her while she was located in Alabama.

14. Plaintiff performed her job duties competently and brought extensive academic leadership, public speaking, and professional engagement experience to the role.

15. During Plaintiff's tenure, AHIMA's senior leadership repeatedly undermined Plaintiff's professional credibility through racially stereotyped, gendered, and disparaging remarks and by restricting Plaintiff's professional visibility and authority in ways not imposed on similarly situated non-Black executives.

16. On or about July 31, 2025, Interim CEO Chris Iaboni made a disparaging remark to Plaintiff during an internal leadership meeting (recorded), stating words to the effect of: "I know you have good things in your brain, but you don't articulate them well." The remark questioned Plaintiff's competence and communication ability despite her executive role and established professional reputation.

17. During Plaintiff's employment (2024–2025), Chief Public Policy & Impact Officer Lauren Ripplinger made a statement in the course of organizational business to the effect that: "Any trouble members can be sent to Jasmine and she will take them to the parking lot." This comment framed Plaintiff using an aggressive stereotype and demeaned her executive role.

18. During Plaintiff's employment (2024–2025), Mr. Iaboni further trivialized and demeaned Plaintiff's work and initiatives, including characterizing one substantive initiative as a "girly fashion show," both in an executive leadership setting and in a subsequent private follow-up conversation. Comparable initiatives led by other senior executives were not described or dismissed in this manner.

19. AHIMA restricted Plaintiff from external speaking engagements and professional visibility opportunities aligned with her role, expertise, and established reputation. These restrictions included discouraging, limiting, or subjecting Plaintiff's speaking and thought-leadership opportunities to heightened scrutiny and pre-approval not required of similarly situated executives.

20. In discussions related to AHIMA's use of artificial intelligence expertise, Plaintiff inquired about contributing based on her background and experience. Vice President of Research Initiatives Melissa Schmidt advised Plaintiff that AHIMA preferred to use external individuals because they were considered more qualified and reputable.

21. Ms. Schmidt also requested copies of Plaintiff's presentations to edit them and create "podium" versions of work that Plaintiff had developed independently and/or prior to joining AHIMA, limiting Plaintiff's control over her professional materials and voice in ways not imposed on other executives.

22. As part of Plaintiff's executive responsibilities, she raised good-faith ethical, governance, and compliance concerns to senior leadership and governing bodies about proposals affecting certification eligibility requirements and the integrity of AHIMA's NCCA-accredited credentials (including concerns regarding accreditation alignment, governance authority, conflicts of interest, and legal/reputational risk).

23. After Plaintiff raised these concerns and after AHIMA's Board declined to approve a proposed plan, AHIMA reduced Plaintiff's responsibilities and reassigned key initiatives within Plaintiff's portfolio (including reassignment to Ms. Schmidt), excluded Plaintiff from key initiatives, and intensified undermining commentary about Plaintiff's competence and professional effectiveness.

24. These adverse actions occurred after, and in close temporal proximity to, Plaintiff's protected activity and were causally connected to Plaintiff's refusal to advance initiatives that she reasonably believed raised ethical, governance, and compliance concerns.

25. Similarly situated executives who were not Black—including David Cella (Chief Executive Officer), Lauren Ripplinger (Chief Public Policy & Impact Officer), Jennifer Mueller (SVP, Career Advancement), Dana Perrino (Chief Member Services Officer), Thomas Mehs (Chief Financial Officer), Jana Nelson (Chief Marketing Officer), and Leslie Patterson Moore (General Counsel)—were permitted to engage in external speaking and public-facing activities, raise concerns without loss of authority, and were not subjected to comparable scrutiny, disparaging commentary, or restrictions.

26. In May 2025, AHIMA issued a written performance evaluation containing language that framed Plaintiff's professional presence and standing in the professional community as concerns rather than assets, further undermining Plaintiff's credibility and professional reputation.

27. By August 2025, AHIMA's conduct and failures to correct the hostile and retaliatory environment made Plaintiff's working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

28. Plaintiff resigned effective August 25, 2025, constituting a constructive discharge.

29. Plaintiff has documented evidence corroborating the discriminatory, hostile, and retaliatory conduct, including contemporaneous recordings and written communications.

## VI. CLAIMS FOR RELIEF

COUNT I — RACE DISCRIMINATION (DISPARATE TREATMENT) — TITLE VII, 42 U.S.C. § 2000e-2(a)

30. Plaintiff incorporates by reference Paragraphs 1–29 as if fully set forth herein.

31. Plaintiff is a member of a protected class (African American) and was qualified for her position.

32. Defendant subjected Plaintiff to adverse employment actions and materially adverse changes in the terms, conditions, and privileges of employment, including restricting professional opportunities and visibility, diminishing authority, and imposing heightened scrutiny not applied to similarly situated non-Black executives.

33. Defendant treated Plaintiff less favorably than similarly situated non-Black executives under similar circumstances.

34. Defendant's actions were motivated, at least in part, by Plaintiff's race.

35. Plaintiff suffered damages as a direct and proximate result of Defendant's unlawful conduct.

COUNT II — RACIALLY HOSTILE WORK ENVIRONMENT — TITLE VII, 42 U.S.C. § 2000e-2(a)

36. Plaintiff incorporates by reference Paragraphs 1–35 as if fully set forth herein.

37. Plaintiff was subjected to unwelcome harassment based on race, including racially stereotyped remarks by senior leadership, disparaging comments undermining her professional contributions, and differential restrictions that isolated Plaintiff and diminished her professional standing.

38. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

39. Defendant is liable because the harassment was committed by supervisors and high-level executives and/or Defendant failed to take prompt and effective corrective action after receiving notice.

COUNT III — RETALIATION — TITLE VII, 42 U.S.C. § 2000e-3(a)

40. Plaintiff incorporates by reference Paragraphs 1–39 as if fully set forth herein.

41. Plaintiff engaged in protected activity by raising good-faith ethical, governance, and compliance concerns regarding certification eligibility requirements and the integrity of AHIMA's NCCA-accredited credentials.

42. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including reducing and reassigning her responsibilities, restricting external speaking and professional visibility, excluding her from key initiatives, and undermining her professional credibility and effectiveness.

43. Defendant's retaliatory actions would dissuade a reasonable employee from engaging in protected activity.

44. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, including temporal proximity and direct linkage to the concerns Plaintiff raised.

COUNT IV — CONSTRUCTIVE DISCHARGE — TITLE VII, 42 U.S.C. § 2000e-2(a) and/or § 2000e-3(a)

45. Plaintiff incorporates by reference Paragraphs 1–44 as if fully set forth herein.

46. Defendant deliberately created and/or knowingly permitted working conditions that were so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

47. Plaintiff resigned effective August 25, 2025, as a foreseeable result of Defendant's discriminatory, hostile, and retaliatory conduct, constituting a constructive discharge.

COUNT V — RACE DISCRIMINATION, HOSTILE WORK ENVIRONMENT, AND RETALIATION — 42 U.S.C. § 1981

48. Plaintiff incorporates by reference Paragraphs 1–47 as if fully set forth herein.

49. Plaintiff is a member of a racial minority, and Defendant intentionally discriminated and retaliated against Plaintiff on the basis of race in the making, performance, modification, and termination of her employment contract and in the enjoyment of the benefits, privileges, terms, and conditions of employment.

50. Defendant's race-based and retaliatory conduct caused Plaintiff's injuries and damages, including economic loss, emotional distress, and reputational harm.

## VII. DAMAGES

51. As a result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain damages including, but not limited to: back pay; front pay or reinstatement; lost benefits; lost bonus compensation; compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; reputational harm; and punitive damages as allowed by law.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award the following relief:

A. Declare that Defendant's conduct violated Title VII and 42 U.S.C. § 1981;

B. Award back pay, lost benefits, and all other compensation due;

C. Award front pay and/or reinstatement to an equivalent position;

D. Award compensatory damages as allowed by 42 U.S.C. § 1981a and other applicable law;

E. Award punitive damages as permitted by law;

F. Award prejudgment and post-judgment interest;

G. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and other applicable provisions; and

H. Grant such other and further relief as the Court deems just and proper.

## IX. JURY DEMAND

Pursuant to Fed. R. Civ. P. 38 and 42 U.S.C. § 1981a, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
/s/ Lilly Albright Rainey
Lilly Albright Rainey (ASB No. 1245L61R)
181 West Valley Avenue, Suite 158
Birmingham, Alabama 35209
Telephone: (888) 769-2006
Email: larainey@albrightrainey.com

Counsel for Plaintiff Dr. Jasmine T. Agnew